UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jorge Luis SOSA,<br><br>                                    Petitioner,<br><br>v.<br><br>O'Brian BAILEY, Warden, et al.,<br><br>                                    Respondents. | Case No.:  22-cv-1022-AGS-BLM<br><br>**ORDER ACCEPTING REPORT AND RECOMMENDATION (ECF 7) AND DENYING HABEAS PETITION (ECF 1)** |

In this petition for a writ of habeas corpus, petitioner seeks relief from his state child-molestation convictions.

## BACKGROUND

After a California state-court trial, petitioner Jorge Sosa was convicted of 26 counts of molestation-related felonies involving two boys. *People v. Sosa*, No. D076457, 2021 WL 220109, at *2, *4 (Cal. Ct. App. Jan. 22, 2021). The specific crimes involved "oral copulation with a child 10 years or younger," "forcible lewd or lascivious acts on a child under 14 years," and "aggravated sexual assault of a child under 14 years." *Id*. The California Court of Appeal affirmed those convictions, *id*. at *11, and the state Supreme Court declined further review (ECF 5-6, at 1). Sosa now requests federal habeas relief.

The state appellate court's recitation of the facts—which is "presumed to be correct" absent "clear and convincing evidence" to the contrary, *see* 28 U.S.C. § 2254(e)(1)—is straightforward. In early 2011, "Sosa's niece Ivon" moved in with Sosa, along with her five children, including the alleged minor victims, her "two sons, IP and LS." *Sosa*, 2021 WL 220109, at *1. "At some point after they moved into the house, Sosa began molesting IP." *Id*. at *2. "IP generally remembered that it happened throughout middle school, but he also recalled incidents from the period when his family lived with Sosa and after they moved out" in 2013. *Id*. at *1–2. IP "could have been as young as eight when the abuse started." *Id*. at *2. "It continued until mid-2016[] and was only disrupted because IP

1

moved to Los Angeles to live with his father." *Id.* "After that, Sosa turned his attention to LS," who was "about twelve years old at the time." *Id.*

In his habeas petition, Sosa advances three arguments: (1) his due-process rights were violated by the "wide-ranging time periods alleged by the prosecution" in the charging document, (2) the evidence is "insufficient" to sustain his conviction, and (3) the cumulative effect of the errors violated due process. (ECF 1, at 7–17.) The magistrate judge recommended rejecting each of these claims. (*See generally* ECF 7.) Sosa objected to this recommendation in its entirety (*see* ECF 9), so this Court considers the matter "de novo." *See* 28 U.S.C. § 636(b)(1). In particular, this Court must examine the California Court of Appeal's opinion, as it is "the state's last reasoned decision." *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## DISCUSSION

### A.    Due Process

In his state-court appeal, Sosa raised a constitutional challenge to the "broad time periods associated with his convictions." *Sosa*, 2021 WL 220109, at *4. Sosa argued that the date ranges of the alleged abuse, "some of which exceed[ed] five years," "denied him due process because they prevented him from mounting an effective defense." *Id.* The Court of Appeal noted that "the primary authority on this point . . . suggests a contrary conclusion," but ultimately did not reach that question, holding that "Sosa forfeited this claim" by failing to timely raise it in the trial court. *Id.* at *4–5.

Federal courts "will not review a question of federal law by a state court," such as Sosa's due-process claim, "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Id.* at 732. The Ninth Circuit has "repeatedly recognized California's contemporaneous objection rule as 'an adequate and independent state ground' that forecloses [habeas] review." *Fauber v. Davis*, 43 F.4th 987, 1002 (9th Cir. 2022).

2

The California Court of Appeal squarely rejected Sosa's due-process claim due to his failure to contemporaneously object to the revised charges in his case. At his preliminary hearing, Sosa "raised a due process concern about the length of the charging periods," and the trial court "acknowledged the due process implications." *Sosa*, 2021 WL 220109, at *5. "When the hearing concluded, the court allowed the prosecution to amend the timeframes in the complaint" and "Sosa was arraigned on an information filed two weeks later." *Id.* The Court of Appeal held that Sosa's objection to the date ranges "should have been pursued after the pleading changes that followed the preliminary hearing." *Id.* "Yet there were no objections or even concerns raised on these grounds either at the conclusion of the preliminary hearing or in the intervening period of about a year before the trial began." *Id.* "Because [Sosa] did not take *any* steps to challenge the broad time ranges on due process grounds at any point after the preliminary hearing," the appellate court held that his "attempt to revive this argument fails." *Id.* In other words, the Court of Appeal dismissed Sosa's claim for failure to contemporaneously object—an independent and adequate state ground precluding federal habeas review. Sosa makes several arguments in an attempt to avoid this result.

## 1. *Initial Forfeiture of the Claim*

Sosa first maintains that he never "forfeit[ed] his claim." (ECF 1, at 8.) He contends that "to preserve an issue for appeal, it is sufficient for the objection to be raised in a manner that alerts the trial court of the nature of the issue and affords the opposing counsel an opportunity to respond," or "even when there is no objection" the issue is preserved "if the trial court rules on the issue." (ECF 1, at 8; ECF 6, at 3.) Sosa says his claim is preserved under this rule because "trial counsel clearly stated she had an issue with the date ranges" and the court "understood" the objection to "implicate concerns of fair notice . . . [and] due process." (ECF 1, at 8; *see also* ECF 6, at 3.) And "even if trial counsel had said nothing about date ranges . . . the trial court engaged in a somewhat lengthy discussion about how the date ranges implicate due process concerns, and then made a ruling on the issue." (ECF 1, at 8; *see also* ECF 6, at 3.) Sosa also says that "nothing substantively changed after

the preliminary hearing regarding the date ranges," and "[w]hile the prosecution may have modified the length of the date ranges for existing counts, and added some new counts," his objection "remained apropos." (ECF 6, at 3.)

Even if the Court agreed with Sosa on any of these points, "[f]ederal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules." *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *see also Quintero v. Stewart*, 121 F. App'x 203, 206 (9th Cir. 2005) ("While [petitioner] asserts that he did not waive his claim, as it was raised before the trial court, this issue is beyond our reach."). Since "it is not the province" of this Court "to reexamine state-court determinations on state-law questions," the Court must reject Sosa's argument that he did not forfeit his due-process claim. *See Estelle v. McGuire*, 502 U.S. 62, 68–69 (1991).

To be clear, however, this Court does not agree with Sosa's characterization of the proceedings. If this Court were to reach the merits, it would agree that he forfeited his claim by failing to object to the charging language. It is worth returning to the relevant facts here. At the preliminary hearing, Sosa's trial attorney raised "some concerns regarding the *complaint*, noting that although she had no problem with the prosecutor charging date ranges in general, she could not easily determine which conduct aligned with which dates." *Sosa*, 2021 WL 220109, at *5 (emphasis added). Yet Sosa proceeded to trial not on that complaint, but on a new charging document: an amended information that altered the allegations in salient respects. Sosa never objected to that amended information—the operative charging document for his trial—nor did he ever "take *any* steps to challenge the broad time ranges on due process grounds at any point after the preliminary hearing." *Id*.

Consider the stark differences between the earlier and later charging documents. In the 15-count complaint, the first 13 charges are lewd acts upon "I.S. [IP]," Cal. Penal Code § 288(a). (ECF 5-12, at 10–14.) *None* of those charges were realleged in the 27-count amended information. The amended information has only two counts of lewd acts, but they both involve a new and different victim, "LS." (*See id*. at 55 (counts 26–27).) Turning to the last two counts of the complaint, they charge forcible lewd acts upon "I.S. [IP],"

4

Cal. Penal Code § 288(b)(1), occurring sometime in the full year between "July 29, 2015," and "July 28, 2016." (*Id*. at 14 (count 14: "touch I.S. penis"; count 15: "touch I.S. anus").) The prosecutor explained that she amended these counts and charged them in counts 21 and 23 of the amended information as "a sexual penetration and an oral copulation" (and during a tighter three-month time frame of "May 1, 2016," to "July 26, 2016"). (*See* ECF 5-7, at 11; *see also* ECF 5-12, at 53–54 (count 21: "oral copulation" upon IP the "day before the fair"; count 23: "sexual penetration" upon IP the "day before the fair").) The amended information also charges some counts that have a longer date range than anything in the complaint, but each of these new counts involve more serious crimes. (*See, e.g.*, ECF 5-12, at 52 (count 18: aggravated sexual assault of a child by sodomy ["last time"], occurring sometime between "January 1, 2011," and "April 30, 2016").)

In the absence of specific objections to the new charging document, a trial court could reasonably assume that Sosa's confusion about "which conduct aligned with which dates" had been resolved by the revised date ranges, new charges, and more precise language. *See Sosa*, 2021 WL 220109, at *5. After all, one purpose of California's contemporaneous-objection rule is "to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action." *See Osborne v. Ohio*, 495 U.S. 103, 125 (1990). Sosa did not do so. His claim is thus forfeited.

## 2. *Fundamental Miscarriage of Justice*

In his objection to the report and recommendation, Sosa changes course slightly, recharacterizing his due-process argument as a claim based on "a fundamental miscarriage of justice." (ECF 9, at 3.) Sosa is on firmer footing here, as the Court may review the merits of a procedurally defaulted claim if the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The "existence of cause for a procedural default 'must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Vansickel v. White*, 166 F.3d 953, 958

5

(9th Cir. 1999). In some circumstances, "counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court will suffice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But a "claim of ineffective assistance" "must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 452. Since Sosa did not raise an ineffective-assistance-of-counsel claim at the state court, he cannot show cause for the default.

Alternatively, "a petitioner must produce sufficient proof of his actual innocence to bring him within the narrow class of cases implicating a fundamental miscarriage of justice." *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011). Sosa only argues that a miscarriage of justice will result because "it was practically impossible for [him] to effectively present, or even investigate," other defenses. (ECF 9, at 3.) Because Sosa does not argue actual innocence, his miscarriage-of-justice argument also fails.

### 3. *Exceptional Case*

Next, Sosa suggests that his circumstances fit within the "exceptional cases" in which the Supreme Court has held that an apparent state procedural bar was "inadequate to stop consideration of a federal question." (ECF 6, at 2.) Yet none of Sosa's proffered Supreme Court cases address the procedural posture here: the defendant (arguably) objected to an earlier charging document, but not to the comprehensively revised and operative charging document at trial. *See supra* section A.1. Nor do Sosa's proffered authorities suggest that his case merits some sort of exceptional procedural dispensation.

For example, the state rules at issue in two cases Sosa relies upon—*Osborne v. Ohio*, 495 U.S. 103 (1990), and *Lee v. Kemna*, 534 U.S. 362 (2002)—amounted to "meaningless formalisms." *Hart v. Broomfield*, No. 20-99011, 2024 WL 1332715, at *3 (9th Cir. Mar. 28, 2024). The *Lee* Court excused noncompliance "with a rule requiring motions to be made in writing where the motion was made orally and the trial court's resolution of the motion had nothing to do with this requirement." *Hart*, 2024 WL 1332715, at *3 (citing *Lee*, 534 U.S. at 381–83). Similarly, the *Osborne* Court forgave "a failure to object to jury instructions after the jury was instructed when the trial court had just rejected identical

motions challenging those instructions." *Id.* (citing *Osborne*, 495 U.S. at 124). In both, the legal objection was squarely and fully before the trial court. Not so here. Sosa *never* objected to the new charging document.

Sosa's reliance on *James v. Kentucky*, 466 U.S. 341 (1984), is similarly unavailing. In *James*, the criminal defendant asked that the jury be told "not to draw an adverse inference from his failure to testify." *Id.* at 344. Although such an instruction would have been proper, the judge refused to give it because it was framed as a request for "an *admonition* rather than an instruction," and the two are treated differently under state law. *Id.* (emphasis added). The Supreme Court noted that the state's "substantive distinction between admonitions and instructions is not always clear or closely hewn to." *Id.* at 346. Given this "state-law background," it concluded that the "distinction between admonitions and instructions is not the sort of firmly established and regularly followed state practice that can prevent implementation of federal constitutional rights." *Id.* at 348–49. Unlike the state rule in *James*, there is no evidence here that California's contemporaneous-objection rule is inconsistently applied. *See infra* section A.4.

In short, Sosa has not shown that his case is deserving of the exception rather than the rule. The trial judge here could have reasonably interpreted Sosa's silence regarding the new charging document as satisfaction with the amended language. Unlike *Osborne*, *Lee*, and *James*, it was not a meaningless formalism to require that any objections be lodged contemporaneously against the revised charging language here.

### 4. *Inconsistent, Novel, or Unforeseen Application*

Sosa also argues in passing that a court may hear "federal claims despite a seeming[] procedural bar when a state inconsistently applies a procedural rule or applies the rule in a novel or unforeseen way." (ECF 6, at 2–3.) "A state ground, no doubt, may be found inadequate when discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law." *Walker v. Martin*, 562 U.S. 307, 320 (2011) (cleaned up).

Because the government adequately "pleaded the existence of an independent and adequate state procedural ground," the burden was on Sosa to "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *See King v. LaMarque*, 464 F.3d 963, 966–67 (9th Cir. 2006). Sosa does not cite to a single case demonstrating that the contemporaneous-objection rule was applied to him in an inconsistent, novel, or unforeseen manner. Meanwhile, there is caselaw to the contrary, suggesting the rule is consistently applied. *See Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002) (noting that the Ninth Circuit "held more than twenty years ago that the [California contemporaneous-objection] rule is consistently applied"). Sosa has not satisfied his burden. His habeas petition is denied as to his due-process claim.

## B.    Sufficiency of the Evidence

On appeal, Sosa claimed there was "insufficient evidence presented at trial to sustain his convictions." *Sosa*, 2021 WL 220109, at *5. The Court of Appeal rejected this argument across the board. *Id.* at *5–10. Sosa now recycles this argument before this Court.

"An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Sosa contends that the Court of Appeal's denial was an "unreasonable application" of *Jackson v. Virginia*, 443 U.S. 307 (1974), and *In re Winship*, 397 U.S. 358 (1970). (ECF 1, at 9.) *Winship* held that due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *Winship*, 397 U.S. at 364. And *Jackson* affords relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, the Court of Appeal "may set aside the jury's verdict on the ground of insufficient

8

evidence only if no rational trier of fact could have agreed with the jury." *Id.* Second, the habeas court may "overturn a state court decision rejecting a sufficiency of the evidence challenge . . . . only if the state court decision was 'objectively unreasonable.'" *Id.* So "the only question under *Jackson* is whether [the Court of Appeal's] finding was so insupportable as to fall below the threshold of bare rationality." *Johnson*, 566 U.S. at 656. Critically, "federal habeas courts" do not have "license to redetermine credibility of witnesses." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

Although the government argues that some of Sosa's *Jackson* claims are procedurally defaulted (ECF 4-1, at 17), the Court need not reach that issue. As discussed below, Sosa's claims are "clearly not meritorious," so it makes sense to "proceed to the merits [since] the result will be the same." *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002).

### 1. *Counts 1–4 & 8–11*

Counts 1–4 and 8–11 all charge Sosa with various forms of oral copulation against IP during two distinct time periods. Counts 1–4 involve conduct between about "January 1, 2011," and "July 7, 2013" (ECF 5-12, at 46–47), that is, "when IP lived with Sosa," *Sosa*, 2021 WL 220109, at *6. Counts 1–2 charge oral copulation with a child 10 years old or younger, Cal. Penal Code § 288.7(b), with count 1 being the "first time" and count 2 the "last time" within that timeframe. (ECF 5-12, at 46–47.) Similarly, counts 3–4 charge forcible lewd acts upon a child under the age of 14 ("touched [IP's] penis with mouth"), Cal. Penal Code § 288(b)(1), with count 3 the "first time" and count 4 the "last time." (ECF 5-12, at 47.)

Counts 8–11 cover the next three years, addressing conduct between about "July 8, 2013," and "April 30, 2016" (ECF 5-12, at 49–50), that is, "when IP lived in a nearby apartment," *Sosa*, 2021 WL 220109, at *6. Counts 8–9 allege aggravated sexual assault of a child under the age of 14 ("oral copulation"), Cal. Penal Code § 269(a), including again the "first time" (count 8) and "last time" (count 9). (ECF 5-12, at 49.) Counts 10–11 charge forcible lewd acts upon a child under the age of 14 ("touched [IP's] penis with mouth"),

9

Cal. Penal Code § 288(b)(1), in the same "first time" / "last time" pattern. (ECF 5-12, at 49–50.)

Sosa doesn't directly challenge any of the elements of the crimes, such as the victim's age or the nature of the sexual acts. Instead, he contends that the "conduct underlying counts 1–4 and 8–11 is not alleged to have occurred on a specific date, or on a specific occasion, or in a specific place." (ECF 1, at 10.) First, Sosa argues that IP's testimony "is entirely void of any cognizable quantity of acts committed," and such "generic testimony fails the *Jones* test, which requires that the victim describe 'the number of acts committed with sufficient certainty to support each of the counts.'" (ECF 1, at 11 (quoting *People v. Jones*, 792 P.2d 643, 655 (Cal. 1990)).) Second, Sosa contends that such "generic evidence cannot adequately differentiate counts 1–4 and 8–11" "from the counts supported by specific evidence." (*Id.* at 10.)

a.  *Cognizable Quantity of Acts*

A federal habeas court assessing the sufficiency of a claim looks to the "substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. So, this Court "is bound by *People v. Jones*, to the extent that *Jones* defines the elements of a state offense." *Thompson v. Cates*, No. 2:22-cv-02966-FMO-BFM, 2023 WL 8872048, at *11 (C.D. Cal. Sept. 1, 2023). Under *Jones*, "the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." 792 P.2d at 655. A victim need not "specify precise date, time, place or circumstance." *Id.* Indeed, "even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents . . . *each* of which could support a separate criminal sanction." *Id.* at 654. Examples of permissible testimony under *Jones* include "twice a month" or "every time we went camping." *Id.* at 655.

Under this nongranular test, the California Court of Appeal reasonably determined that IP's testimony satisfied the elements of the crimes charged in counts 1–4 and 8–11. Recounting the "general testimony" supporting these convictions, the Court of Appeal

10

noted that "IP explained that Sosa would orally copulate him 'the most,' and that this conduct happened both while they lived together and afterward." *Sosa*, 2021 WL 220109, at *6. IP "also answered affirmatively when asked if Sosa orally copulated him 'often,' and if there were 'multiple' incidents of this kind that spanned the first and second periods." *Id.* "Taken as a whole," the Court of Appeal found that "IP's testimony indicates Sosa . . . orally copulated him at least twice in both the first and second periods." *Id.*

The trial transcripts support the Court of Appeal's conclusion. IP affirmed that "there were multiple times that [Sosa] put his mouth on [IP's] penis"; that it "happened while [he was] living with [Sosa]" and "after [IP] moved out"; and that it "happened often." (ECF 5-9, at 272–73.) When the prosecutor asked IP "what touching happened most," IP answered, "his mouth to my penis." (*Id.* at 273.) A reasonable jury could have found, based on this testimony, that Sosa orally copulated IP multiple times within each time period. So, it was reasonable for the Court of Appeal to find the evidence sufficient to support charges based on a first and last time in each period. *See, e.g.*, *Cates*, 2023 WL 8872048, at *11 (upholding state appellate court's determination that victim's testimony "provided the requisite level of detail regarding the frequency and time period in which she suffered abuse," when she testified that it occurred "whenever [defendant] was alone with her, about every other day," from "from the age of eleven until she was around sixteen years old"), *report and recommendation adopted*, No. 2:22-cv-02966-FMO-BFM, 2024 WL 733516 (C.D. Cal. Feb. 22, 2024); *Nuno v. Davey*, No. 11–02446 SBA (PR), 2014 WL 3725332, at *11, *13 (N.D. Cal. July 21, 2014) (upholding state appellate court's sufficiency finding when molestation victim "stated that defendant touched her more than one time on more than one day," "again and again" over a three-year period).

b. *Overlap Between Generic and Specific Counts*

In addition to the incidents charged generally as first and last times, there were four specific acts that gave rise to four separate counts: (1) Sosa "touched [IP's] penis in the shower" (count 7); (2) IP "touched defendant's penis with his mouth, the day before the fair" (count 12); (3) Sosa "touched [IP's] penis with [his] mouth in the garage" (count 15);

11

and (4) Sosa "touched [IP's] penis in [IP's sister, IH's] room" (count 16). (ECF 5-12, at 48–51.) Sosa argued on appeal that the prosecution "fail[ed] to distinguish" the "generic testimony" from the "specific counts," but the Court of Appeal found "there were significant factors setting the specific incidents apart that could lead a reasonable jury to conclude they were additional abuse events." (ECF 1, at 12); *Sosa*, 2021 WL 220109, at *7.

Since the garage and fair incidents involve oral copulation, the Court must determine whether the evidence was sufficient to support convictions on the generic oral copulation charges *and* these two specific acts. In regard to the garage incident, the Court of Appeal found that event was "distinguished by [its] unusual setting[], and this difference provided enough grounds for a reasonable jury to conclude [it was] distinct from the more routine abuse IP described as taking place in Sosa's room." *Sosa*, 2021 WL 220109, at *7.

At trial, after IP testified generally about the continued oral copulation that happened "often," IP was asked whether he "remember[ed] any other specific times." (ECF 5-9, at 213.) IP described a time, "a little bit before Halloween," when he went to Sosa's house because he "needed costumes." (*Id.*) IP stated that when he and Sosa "went into the garage," Sosa "pulled out a box of costumes" and then "started taking [IP's] clothes off, and [Sosa] started to put his mouth on [IP's] penis." (*Id.*) Later, IP confirmed that was "the only time that touching happened in the garage." (*Id.* at 217.) The garage conduct was explicitly linked to a specific count when the prosecutor stated "[IP], this time in the garage that you're telling us about would be count 15." (*Id.* at 213.) Based on IP's detailed recall of the garage event, confirmation that it was the only time it happened there, and the prosecutor's dot-connecting at trial, a reasonable jury could have found that this conduct was sufficient to convict Sosa on a separate count.

The Court of Appeal found that a "similar logic applies to the abuse that occurred the night before the fair." *Sosa*, 2021 WL 220109, at *7. The court held that the fair incident was "distinguished by the activity" and "set off temporally" from the general abuse since it took place "in a distinct third charging period during the summer before IP moved to Los Angeles." *Id.* The Court of Appeal also underscored the "prosecution's treatment of

12

these as independent events throughout the trial" as well as the prosecutor's closing argument, which "specifically distinguished the incidents in the garage, the shower, IH's room and the night before the fair from the other charges." *Id.*

IP gave distinct testimony about "the day before the fair." (ECF 5-9, at 224.) Notably, IP stated that this time IP "put [his] mouth on [Sosa's] penis," instead of the other way around, and that this type of conduct only happened "one time." (*Id.* at 223–24.) Thus, a rational jury could have convicted Sosa on separate counts because the fair incident—carefully distinguished at trial—was based on different conduct than the general abuse. The Court finds nothing unreasonable about the Court of Appeal's holding. Sosa's petition is denied as to counts 1–4 and 8–11.

### 2. *Counts 5, 6, 13, & 14*

The conduct underlying counts 5, 6, 13, and 14 is manual touching, and each count charges forcible lewd act upon a child under age 14, Cal. Penal Code § 288(b)(1). (*See* ECF 5-12, at 48, 50–51.) Just like the oral copulation charges, counts 5 and 6 account for the first and last time Sosa manually touched IP in the earlier period when they lived together, while counts 13 and 14 are the first and last times it happened in the later period when they lived apart. (*See id.*) Sosa makes the same "generic testimony" arguments as he did above, arguing these counts are insufficient under *Jones* and indistinguishable from other specific-act counts. (ECF 1, at 12–13.)

#### a. *Lack of Cognizable Quantity of Acts*

As for the *Jones* argument, the Court of Appeal relied on "IP's general testimony . . . that Sosa abused him 'whenever we would be alone.'" *Sosa*, 2021 WL 220109, at *6. Importantly, the Court of Appeal "link[ed] the copulation with manual touching," noting that "IP explained that Sosa usually touched his penis with his hand at some point during episodes of oral copulation." *Id.* IP also "affirmed that Sosa touched him this way more than once both when he lived with Sosa and after his family moved out." *Id.*

The transcripts support this conclusion. IP was asked "whenever [Sosa] did touching with his mouth to your penis, did he also generally use his hand to touch your penis?"

(ECF 5-9, at 273.) IP answered "yes." (*Id.*) So, for the same reasons IP's testimony concerning the frequency of the oral copulation was sufficient under *Jones*, IP's testimony that Sosa manually touched him with the same frequency was also sufficient.

      b. *Overlap Between Generic and Specific Counts*

      Sosa also contends "there is no way to distinguish" the general touching that supported the first- and last-time charges "from the other more specific counts . . . for which the convictions are also based on [Sosa] touching [IP's] penis with his hand." (ECF 1, at 13.) The two specific acts that involve manual touching are when Sosa "touched [IP's] penis in the shower" and when Sosa "touched [IP's] penis in [IH's] room." (ECF 5-12, at 48, 51.)

      "As to the shower incident," according to the Court of Appeal, "IP specifically testified that he could not really remember the first time that Sosa touched his penis with his hand, but he had a distinct memory of an incident in the shower," which indicated "it was not the first time." *Sosa*, 2021 WL 220109, at *7. "At other points, IP expressed difficulty in recalling last incidents of abuse, and affirmed that it happened so often he could not remember every time." *Id.* Thus, the court held, "this is enough for the jury to reasonably conclude the specific shower incident did not overlap with the first or last time Sosa touched IP's penis while they lived together." *Id.* This conclusion is reasonable and supported by the trial record.

      IP made clear that, "because it happened so often," he could not "remember every time" that Sosa touched IP's "penis with his hand." (ECF 5-9, at 274.) Yet IP detailed the shower incident, saying he "went to go take a shower in [Sosa's] room . . . [and] then [Sosa] came in the bathroom, and he . . . opened the curtain and the sliding door and reached down for . . . [IP's] penis." (*Id.* at 211–12.) Sosa proceeded to use "his hand" to "touch [IP's] penis." (*Id.*) This evidence supports an additional, distinguishable conviction based on the specific shower testimony. And the prosecutor clarified that this conduct was connected to a distinct count. When IP affirmed that he "remember[ed] a time when . . . touching happened in the shower," the prosecutor noted, "[T]hat would be

count 7." (*Id.* at 211.) There was sufficient evidence to support the specific shower count (count 7) in addition to the general counts.

Turning to the incident in IH's room, the Court of Appeal found that it, like the garage incident, was "distinguished by [its] unusual setting." *Sosa*, 2021 WL 220109, at *7. When IP was asked about "something that happened in [IH's] room," IP recalled that Sosa "was in the room with" IP and IH until IH "left the room to go shower." (ECF 5-9, at 219.) IP then said he "did not remember how," but he was "on the floor, and [Sosa] was holding [him] down." (*Id.*) Sosa then "started to take [IP's] clothes off" and "touch [his] private parts" with "his hand." (*Id.* at 219–20.) Just like the garage incident, the details unique to this incident—that is, the location, circumstances, and Sosa holding IP down on the floor—distinguish this conduct from the other manual touching incidents. Plus, the prosecutor made the point during IP's testimony that "something happened in [IH's] room . . . which would be count 16." (*Id.* at 218–19.) A rational jury could have made the distinction between the generic counts and this specific incident. The Court of Appeal was therefore reasonable in finding as much. Sosa's petition is denied as to counts 5, 6, 13, and 14.

### 3. *Count 7*

Count 7 charges that Sosa "touched [IP's] penis in the shower" and thereby committed a forcible lewd act upon a child under age 14, Cal. Penal Code § 288(b)(1). (ECF 5-12, at 48.) Among other things, this crime requires proof that Sosa "willfully touched any part of [IP's] body" "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or [IP]," *see People v. Valenti*, 197 Cal. Rptr. 3d 317, 332 (Ct. App. 2016), and that the act was committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person," Cal. Penal Code § 288(b)(1). Sosa contends the "evidence is insufficient to establish that the charged act was completed" nor that Sosa "used force, violence, duress, menace, or fear to accomplish the act." (ECF 1, at 13.) For similar reasons, he also contests the "substantial sexual conduct" enhancement based on the masturbation. *See* Cal. Penal Code § 1203.066(a)(8) & (b). The "term 'masturbation' includes any

15

touching or contact of the genitals of either the victim or the offender . . . with the requisite intent." *People v. Lopez*, 20 Cal. Rptr. 3d 801, 805 (2004).

Specifically, Sosa homes in on when the prosecutor asked IP, "[W]ere you standing in the shower when [Sosa] used his hand to touch your penis?" And IP responded, "Yes." (ECF 5-9, at 212.) Sosa claims this question was "compound and leading," and "[i]t would be entirely speculative to say whether the testimony meant anything other than: 'yes, I was standing in the shower.'" (ECF 1, at 14.) Therefore, claims Sosa, the "evidence fails to sufficiently establish" "that any touching occurred" or "that the act was substantial sexual conduct." (*Id.*)

The Court of Appeal held that "a reasonable jury could easily conclude [IP] answered yes to both parts of the question." *Sosa*, 2021 WL 220109, at *9. In discounting Sosa's "thin argument," the court itself determined that "IP answered affirmatively because the question was an accurate description of how this incident took place." *Id*. This Court agrees.

A federal habeas court must assume "that the jury resolved all conflicts in a manner that supports the verdict," which dooms Sosa's dubious compound-question argument. *See Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). Even if this were not so, however, the evidence supports the verdict. Sosa omits the colloquy leading up to the question at issue, including IP's testimony that Sosa "came in the bathroom" while IP was in the shower, "opened the curtain and the sliding door and reached down for [IP's] . . . penis, to touch me." (ECF 5-9, at 212.) The prosecutor asked, "what did he use to touch your penis with?" and IP replied, "his hand." (*Id.*) IP then stated he "tried to scoot away from [Sosa], but he kept trying to reach for my penis." (*Id.*) Only *after* this unequivocal testimony did the prosecutor ask the question that Sosa protests. Even if the trial court had struck the disputed question and answer entirely, a rational jury would still have had enough evidence to find that Sosa touched IP's genitals in the shower. Thus, Sosa's claim that the prosecution failed to prove the charged act was completed is meritless.

16

Sosa offers little argument about the deficiencies in the evidence of force, violence, duress, menace, or fear. (*See* ECF 1, at 14.) Nevertheless, the Court of Appeal noted that "duress . . . best fits this fact pattern," and this Court agrees. *See Sosa*, 2021 WL 220109, at *8. "Duress, as used in section 288(b)(1)" and applied by the Court of Appeal, "means a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." *People v. Soto*, 245 P.3d 410, 421 (Cal. 2011) (cleaned up); *Sosa*, 2021 WL 220109, at *8.

In evaluating duress, juries "consider all the circumstances . . . including the age of the child and the child's relationship with the defendant." *Sosa*, 2021 WL 220109, at *8 (citing *People v. Cochran*, 126 Cal. Rptr. 2d 416, 422 (Ct. App. 2002)). As the Court of Appeal observed, although "Sosa was not IP's biological father, he was seen by many family members in this light." *Id*. "Considering Sosa's fatherly role, IP's young age when the abuse began (likely eight or nine), and the fact that they lived together, there is no reason to distinguish this case from others that find duress when a father molests a child in the family." *Id.* "Taken as a whole," the court opined, "the record tells the story of a young boy who was singled out and preyed on by a beloved uncle who supported his mother in multiple ways." *Id.* at *9. These circumstances, combined with the "degree of force" Sosa employed to "hold [IP] down or grab his arms," provided the context for "a reasonable jury [to] find beyond a reasonable doubt that the abuse was accomplished by means of duress." *Id.*

The record amply supports the court's conclusion. IP testified that he "lived with [Sosa]" and that Sosa "was like a father to [him]." (ECF 5-9, at 172.) IP "loved [Sosa] very much" and "trusted him." (*Id.*) And Sosa supported IP's family. They moved in with Sosa because IP's mother was laid off and she "had just [had] her daughter," so living with Sosa "would be a new beginning for [her] and the kids." (*Id.* at 288–89.) IP was about nine years old when the abuse began and "significantly smaller" than Sosa, a man 40 years his senior.

(*See* ECF 5-9, at 168; ECF 5-10, at 171; ECF 5-12, at 44.) And IP testified that on multiple occasions Sosa held him down during the abuse. (*See, e.g.*, ECF 5-9, at 179 ("He would hold me down and he wouldn't let me . . . push him off of me."); *id.* at 216 ("He was holding me . . . by my arms."); *id.* at 227 ("I tried to push him away . . . I wasn't strong enough to push him away from me.").)

Based on these facts, a rational jury could find that Sosa made an implied threat of "force" or "hardship" "sufficient to coerce" IP "to perform an act which otherwise would not have been performed" or "acquiesce in an act to which [he] otherwise would not have submitted." *See Soto*, 245 P.3d at 421. In fact, courts routinely find evidence of duress sufficient based on circumstances like we have here—IP's family situation and age, Sosa's role as a father figure, the physical disparity between them, and evidence Sosa restrained IP. *See, e.g.*, *Carranza v. Long*, No. CV 13-1555-R JPR, 2014 WL 580240, at *8 (C.D. Cal. Feb. 12, 2014) ("The California Court of Appeal was not objectively unreasonable in finding that the nine-year-old victim would not have submitted to sexual penetration by Petitioner had he not been significantly older, larger, and in a position of authority over her."), *aff'd sub nom. Carranza v. Martel*, 722 F. App'x 612 (9th Cir. 2018); *Cabrera v. Cates*, No. 20-CV-01256-JST, 2023 WL 5111981, at *14, *16 (N.D. Cal. Aug. 9, 2023) (upholding state appellate court's determination that evidence of duress was sufficient when the victim "was much younger, as well as physically much smaller, than defendant, who, as a father figure, held a position of parental authority over her").

Sosa's habeas petition is denied as to count 7.

### 4. *Count 12*

Count 12 charged Sosa with aggravated sexual assault of a child, Cal. Penal Code § 269(a), when IP "touched [Sosa's] penis with his mouth, the day before the fair." (ECF 5-12, at 50.) Sosa claims the prosecution failed to prove that IP "did not consent to the act," nor that "the defendant accomplished the act by force, violence, duress, menace, or fear," as required. (ECF 1, at 14–15.) In a footnote, the Court of Appeal dismissed the consent argument, noting that this "factor is irrelevant in a child abuse case." *Sosa*,

18

2021 WL 220109, at *10 n.8. As that court pointed out—and this Court reiterates—"children cannot consent to sex acts with adults as a matter of law." *Id.* (citing *Soto*, 245 P.3d at 415).

For the same reasons mentioned earlier, there is enough evidence to prove that these crimes were committed by duress during the periods of abuse. *See, supra*, section B.3. As to count 12, IP's testimony is consistent with the other evidence of duress. IP testified that he engaged in the sex act because he "trusted [Sosa]." (ECF 5-9, at 223.) Sosa's habeas petition is denied as to count 12.

### 5. *Counts 17, 18, & 23*

Sosa next maintains that the evidence is too "imprecise" to "establish the requisite penetration for counts 17, 18, and 23," which each allege aggravated sexual assault of a child under age 14, Cal. Penal Code § 269(a). (*See* ECF 1, at 17; ECF 5-12, at 52, 54.) Specifically, count 17 ("first time") and count 18 ("last time") each specify the crime was committed by "sodomy," while count 23 was committed by "sexual penetration." (ECF 5-12, at 52, 54.) As Sosa correctly points out, "all three counts require sufficient evidence of anal penetration." (ECF 1, at 15.)

According to the Court of Appeal, "penetration" in this context means "penetration past the buttocks and of, at a minimum, the perianal folds or anal margin." *Sosa*, 2021 WL 220109, at *10 (citing *People v. Paz*, 217 Cal. Rptr. 3d 212, 223 (Ct. App. 2017)). The court reasoned that since "IP distinguished between touching that occurred to the 'outside of the butt' and the 'butthole,'" a "jury could reasonably have inferred 'outside of the butt' meant buttocks and 'butthole' meant anus." *Id.* "As such, a reasonable jury that credited his testimony could have found there was penetration on all three counts." *Id.* "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). So, this Court is bound by the Court of Appeal's interpretation of "penetration" and "anus."

Starting with the sodomy counts, IP testified that he and Sosa "would be in [Sosa's] room," and Sosa "would put lotion on [IP's] privates." (ECF 5-9, at 225.) Sosa would then

19

1  "grab[] [IP's] penis" and "try to put [IP's] penis in his butt." (*Id.* at 226.) IP said this
2  happened "like, twice." (*Id.*) When asked how far his penis got, IP replied "it touched
3  [Sosa's] butt." (*Id.*) When asked if his penis "ever touch[ed] [Sosa's] butthole," IP replied,
4  "Yes." (*Id.*) Apart from this evidence of compelled sodomy—that is, Sosa forcing IP's
5  penis into Sosa's "butthole"—the prosecutor asked what IP was "able to remember" about
6  the reverse situation: Sosa's "penis going to [IP's] butt." (*Id.* at 229.) IP stated, "it touched
7  my butthole and the outside of my butt." (*Id.*) IP confirmed that the "touching [of Sosa's]
8  penis to [his] butthole" only happened "one time." (*Id.*)

9        This evidence is sufficient to support the sodomy counts. IP's statements distinguish
10  between the "outside" of the butt and the "butthole." Testimony that there was contact
11  between a penis and "butthole"—which the Court of Appeal found constitutes
12  penetration—would allow a rational jury to find that penetration occurred. And IP's
13  testimony that there were (at least) two separate incidents supports convictions on both the
14  first- and last-time sodomy charges.

15        Count 23 is based on the incident that took place the "day before the fair." (*See*
16  ECF 5-12, at 54.) In addition to the oral copulation discussed above, IP also recounted that
17  Sosa used his hand to try to "touch [IP's] butt." (ECF 5-9, at 180.) When the prosecutor
18  first asked IP whether Sosa "touch[ed] [his] butthole," IP responded, "kind of." (*Id.*) But
19  then the prosecutor asked IP, "did [Sosa] touch your actual butthole but didn't go any
20  further?" to which IP answered, "yes." (*Id.*) IP followed this up by telling the prosecutor
21  that he "push[ed] [Sosa's] hand away" "when it got to [IP's] butthole." (*Id.*) Despite any
22  initial confusion about this incident, a jury crediting IP's testimony could have determined
23  that Sosa touched IP's butthole with his hand before IP pushed him away, amounting to
24  penetration.

25        None of the Court of Appeal's sufficiency rulings on these counts were objectively
26  unreasonable. Sosa's petition is denied as to counts 17, 18, and 23.

27
28

**C.    Cumulative Error**

Finally, Sosa argues that even if none of his individual arguments "amount[] to a due process violation, when taken together, these errors produced a trial that was fundamentally unfair." (ECF 1, at 17.) "[T]he combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007). The problem is that Sosa alleges many errors concerning the sufficiency of the evidence, but only one trial error: the broad time periods set forth in the charging document. (*See generally* ECF 1.) "There can be no cumulative error when a defendant fails to identify more than one error." *United States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012). So, Sosa's cumulative-error argument fails.

**D.    Evidentiary Hearing**

Sosa "alternatively" requests "an evidentiary hearing to address any facts still in dispute." (ECF 6, at 4.) But when a petitioner "has failed to demonstrate that the adjudication of his claim based on the state-court record resulted in a decision 'contrary to' or 'involving an unreasonable application' of federal law, a writ of habeas corpus 'shall not be granted' and our analysis is at an end." *Cullen v. Pinholster*, 563 U.S. 170, 203 n.20 (2011) (quoting 28 U.S.C. § 2254(d)). In other words, "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief." *Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013). Because Sosa "failed to surmount § 2254(d)'s limitation on habeas relief," he is "not entitled to an evidentiary hearing." *See id.* at 1076.

**E.    Certificate of Appealability**

In the event his petition is denied, Sosa requests "the Court issue a certificate of appealability on the constitutional issues raised." (ECF 9, at 5.) "[A]n appeal may not be taken to the court of appeals" unless the judge "issues a certificate of appealability," 28 U.S.C. § 2253(c)(1), which is only available when "the applicant has made a substantial showing of the denial of a constitutional right," *id.* § 2253(c)(2). A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his case or that the issues presented were adequate to deserve encouragement

21

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003). Importantly, Sosa is not required to show "that some jurists would grant the petition," since "a claim can be debatable even though every jurist of reason might agree . . . that [he] will not prevail." *Id.*

The Court is satisfied, based on the extensive evidence supporting Sosa's conviction, that its sufficiency findings are indisputable. Sosa is therefore denied a certificate of appealability on his sufficiency-of-the-evidence claims.

As for Sosa's due-process claim, the Court must "evaluat[e] both the procedural ground and the underlying constitutional claim to determine if they are 'debatable' among 'jurists of reason.'" *Valerio v. Crawford*, 306 F.3d 742, 774 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In an abundance of caution for Sosa's constitutional rights—and given the lack of case law addressing these exact circumstances—this Court concludes that the due-process claim is "adequate to deserve encouragement to proceed further," even if "every jurist of reason might agree" that Sosa will not prevail. *See Miller-El*, 537 U.S. at 323. It is conceivable that a higher court might one day hold that date-range objections to an earlier charging document preserve similar objections to a new charging document with different language, different crimes, and different (and sometimes shorter) date ranges.

Moreover, Sosa makes a substantial showing of the denial of a constitutional right. Sosa argues that the "sixty-four-month date ranges alleged" in some counts of the amended information "violated [his] rights to due process" by "[f]oreclosing the possibility of" presenting "potentially viable defenses" such as an "alibi or lack of opportunity." (ECF 1, at 8–9.) The Ninth Circuit has affirmed that "due process is not violated by the absence in the charging document of precise dates," particularly in cases like here when the perpetrator "resides in the same home with the minor child or has recurring access to the child." *Brodit v. Cambra*, 350 F.3d 985, 988 (9th Cir. 2003). But the challenged date range in *Brodit* was only about 18 months. *Id.* (noting that petitioner was charged "with three or more acts of sexual abuse occurring on unspecified dates between June 12, 1992, and December 31, 1994"). The Court of Appeal did not cite to, nor is this Court aware of, any

22

precedent that expands the *Brodit* holding to date ranges exceeding 18 months, let alone five years. So, reasonable jurists could find Sosa's due-process claim debatable, and a certificate of appealability is granted as to this claim.

## CONCLUSION

The Court accepts the report and recommendation, and Sosa's habeas corpus petition is **DENIED**. The Clerk will enter judgment accordingly. Sosa is granted a certificate of appealability on his due-process claim only.

Dated: April 2, 2025

_____

Hon. Andrew G. Schopler
United States District Judge